UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

**DALTON LUDWIG and TRAVIS MCCARTHY on behalf of themselves and others similarly situated,**

Plaintiffs,

vs.

**CROWN, CORK & SEAL INC. dba CROWN CORK & SEAL USA, INC.,**

Defendant.

---------------------------------------------------------------X

Case No.: 3:26-cv-195 (FJS/TWD)

**PLAINTIFFS' CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiffs, Dalton Ludwig, and Travis McCarthy, individually and on behalf of all others similarly situated, make the following complaint against Defendant Crown Cork & Seal Inc.:

## NATURE OF THE CASE

1. This is an action for unpaid wages under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) based on Crown Cork & Seal's illegal time-rounding policies.

2. Crown Cork & Seal implements a one-way rounding policy that rounds hours worked down to the benefit of the employer but never rounds up to the benefit of the employee.

3. Crown Cork & Seal employees frequently come in and begin working before their scheduled shift, and frequently stay late after the end of their scheduled shift.

4. Crown Cork & Seal has an electronic timekeeping system that employees use to clock in when they being working. The system is capable of accurately recording the precise time that employees begin working. Instead of doing so, Crown Cork & Seal chooses to implement a time-rounding policy that rounds the time down.

5. Under the Defendant's policy, when employees work more than the hours they are scheduled before or after their scheduled shift, the employer always rounds down the time worked and the employees are shorted time for which they receive no pay. The policy always favors the employer for the period that is rounded.

6. The applicable law permits rounding work time to the nearest quarter-hour, where it is impractical, as a matter of industrial reality, to record precise starting and stopping times, as long as the rounding policy is neutral (that is, it does not favor the employee or the employer, but rounds in both directions so that over time it presumably averages out) and does not result over time in the employees being denied wages. *See* 29 C.F.R. § 785.48(b).

7. Crown Cork & Seal's policy is not neutral; it is one-sided, and only ever works to the benefit of the employer. If employees work their shift, they are paid for the hours worked. But if they work more than their scheduled shift, the employer rounds down and the employees are shorted hours.

8. Therefore, over time, Crown Cork & Seal's employees are being systematically denied pay for time that they work before their scheduled start of the shift and denied pay for working after the schedule end of the shifts, including overtime pay during workweeks in which they work more than forty (40) hours.

9. Plaintiffs therefore bring this action to vindicate their rights under both state and federal law and recover their unpaid wages. Because this policy applies to large numbers of employees, Plaintiffs bring this action as a collective action under the FLSA, and a class action under the NYLL, on behalf of all other employees who were subjected to the illegal rounding policy.

## THE PARTIES

**Plaintiffs:**

**Dalton Ludwig**

10. Plaintiff Dalton Ludwig ("Ludwig") is an adult individual who is a resident of Athens, Pennsylvania.

11. Plaintiff Ludwig is a current employee of Defendant since on or about June 26, 2016, and has been working at the Nichols Plant #35 in New York for over nine (9) years as a Millwright, and continues to be employed in this capacity.

12. Plaintiff Ludwig is a covered employee within the meaning of the FLSA and the NYLL.

13. A written Consent Form under the FLSA for Plaintiff Ludwig is attached as Exhibit A to this Class Action Complaint.

**Travis McCarthy**

14. Plaintiff Travis McCarthy ("McCarthy") is an adult individual who is a resident of Chemung, New York.

15. Plaintiff McCarthy is a current employee of Defendant since on or about October 14, 2019 and has been working at the Nichols Plant #35 in New York for over six (6) years as a Millwright and continues to be employed in this capacity.

16. Plaintiff McCarthy is a covered employee within the meaning of the FLSA and the NYLL.

17. A written Consent Form under the FLSA for Plaintiff McCarthy is attached as Exhibit A to this Class Action Complaint.

**Defendant**

18. Crown Cork & Seal Inc. dba Crown Cork & Seal USA, Inc. ("CCS" or "Defendant") is in the business of manufacture, design and sale of packaging metal products for consumer goods.

19. CCS operates manufacturing facilities in several locations, which, as of 2021, consisted of approximately 239 plants in 47 countries, and approximately 154 plants nationwide, including a plant located at 650 Berry Rd., Nichols, New York in Tioga County ("Nichols Plant #35"), where CCS manufactures, fabricates, and assembles aluminum cans used for beverage packaging.

20. CCS is a domestic corporation formed in the state of Delaware.

21. CCS' headquarters and principal place of business is located at 770 Township Line Road, Yardley, Pennsylvania 19067.

22. CCS was and still is a foreign corporation registered to do business under the laws of the state of New York in 1997, with a place of business in New York, one of which employed the Plaintiffs, known as the Nichols Plant #35 in or about 2015.

23. Upon information and belief, CCS employs at least 220 people at its New York plant. The actual amount of employees in other locations is unknown, given it is a national company. As a whole, at least as of 2021, CCS employed approximately 5,600 workers nationwide and approximately 33,000 worldwide.

24. CCS is a public company and a Fortune 500 Company, and one of the largest manufacturers of its industry.

25. Upon information and belief, at the Nichols Plant alone, there are approximately 150 of the 220 employees that are subject to different shifts and are subject to the illegal rounding policy imposed by CCS.

26. CCS is an employer under the New York Labor Law and the Fair Labor Standards Act.

27. CCS's success has been dependent upon the ability to perform continuous manufacturing operations around the clock, and this has come at the expense of its employees for whom it has failed to pay agreed-upon wages.

28. CCS employed Plaintiffs and similarly situated employees at all times relevant, and had substantial control over Plaintiffs wages and over the unlawful policies and practices alleged herein.

29. During all relevant times, CCS imposed the same rounding policy, described in more detail in this complaint, upon Plaintiffs and other similarly situated employees, who worked for CCS, and subject to the same unscrupulous and illegal policy. CCS created the illegal and unlawful rounding policy of all employees is the subject of this Class Action Complaint.

30. Upon information and belief, at all times relevant, CCS's annual gross volume of sales and business was not less than $500,000.

31. At all relevant times, CCS was also aware of the illegal and unlawful rounding policy and its impact on wages, and the harm to Plaintiffs and allowed it to continue.

## JURISDICTION AND VENUE

32. The Court has jurisdiction over Plaintiffs' claims under FLSA under U.S. Constitution Art. III, § 2, 28 U.S.C. §§ 1331 & 1337, and 29 U.S.C. § 216(b) because those claims arise under federal statutes.

33. The Court has supplemental jurisdiction over the Plaintiff's state law claims under U.S. Constitution Art. III, § 2, and 28 U.S.C. § 1367 because Plaintiffs' state law claims are so closely related to the claims under the FLSA that they form part of the same case or controversy under Article III of the U.S. Constitution.

34. This Court also has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4 and New York Civil Practice Law & Rules 302(a)(1) because the Defendant transacted business in New York State by operating at least one plant in New York and is therefore subject to a court of general jurisdiction in New York State.

35. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2022.

36. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiffs bring the First cause of action, under the FLSA, on behalf of themselves and all similarly situated persons who were employees that worked for Defendant as part of the Continuous Operation Schedule & Shift Rotation (explained in more detail below), who elect to opt into this action (the "FLSA Collective").

38. Defendant is liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs for all overtime hours worked. There are many similarly situated current and former employees of CCS who were denied overtime pay for all the overtime hours they worked, in violation of the FLSA, due to Defendant's unlawful rounding policy. Because the rounding policy applies to a very large number of employees, those employees would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to CCS, readily identifiable, and can be located through its records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring the Second through Fourth causes of action, under the NYLL and New York common law, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class of persons, consisting of the following:

> All persons who have worked for CCS in the State of New York between February 6, 2020 and the date of final judgment in this matter who work or worked on the Continuous Operation Schedule & Shift Rotation, ("the Rule 23 Class").

40. Excluded from the Rule 23 Class are Defendant; Defendant's legal representatives, officers, directors, signs, and successors, or any individual who has or will or who has had at any time during the Class period a controlling interest in CCS; the judges to whom this case is assigned and any Members of the judge's immediate family; and all persons who submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

41. The employees in the Rule 23 Class are so numerous that joinder of all Members is impracticable.

42. Upon information and belief, at minimum, there are 150 or more Rule 23 Class Members in New York, and although the precise number of such employees is unknown, the relevant facts are presently within the sole control of Defendant.

43. The number and identity of the Rule 23 Class Members are determinable from the Defendant's records. The hours assigned and worked, the type of shifts, positions held, pay, and impact on wages from the unlawful rounding policy, for each of the Rule 23 Class Member is readily determinable from Defendant's records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendant's records, and notice can be provided by means permissible under the Federal Rules of Civil Procedure.

44. The Rule 23 Class Members are so numerous that joinder of all Members is impracticable, and the disposition of the claims of the Rule 23 Class will benefit the Parties and the Court.

45. The Plaintiffs' claims are typical of those claims which could be alleged by any of the Rule 23 Class Members, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in a separate action.

46. All of the Rule 23 Class Members were subject to the same corporate practices of Defendant as a result of paying wages for time that the employees worked as a result of the unlawful and illegal rounding policy, failing to provide proper annual wage and hour notices and failing to provide proper wage statements.

47. Plaintiffs and Rule 23 Class Members have all been injured and under-compensated due to Defendant rounding policy, practice, and patterns of conduct, and Defendant's policy and practice, affected all Rule 23 Class Members similarly, and Defendant benefited from the same unfair and/or wrongful acts.

48. Plaintiffs and Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures, and Defendant failure to comply with the NYLL.

49. Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interest antagonistic to the Rule 23 Class Members.

50. Plaintiffs are represented by attorneys who are experienced and competent in both Class-action litigation and employment litigation and previously represented many wage and hour cases.

51. A Class Action is superior to other available means for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant.

52. Class-action treatment will permit a large number of similarly situated persons to prosecute the common claims in a single form simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a Class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for individual Rule 23 Class Members to redress the wrongs done to them.

53. Important public interests will be in served by addressing the matter as a Class action. The adjudication of each of the Rule 23 Class Member claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class action would result in significant savings of these costs. The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to each individual Rule 23 Class Member, establishing incompatible standards of conduct for Defendant and resulting in impairment of all Rule 23 Class Members rights and dispositions of their interest through actions to which they are not parties. The issues in this action can be decided by means of common, Class-wide proof, and the Court can, and is empowered to, fashion methods to efficiently manage this action as a Class action.

54. Upon information and belief, Defendant violated the NYLL, and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, while former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who were not named in the Complaint a degree of anonymity, which allows for the vindication of their rights by eliminating or reducing these risks.

55. This action is properly maintainable as a Class action under Federal Rule of Civil Procedure 23(b)(3).

56. Defendant acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate, final relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

57. The common questions of law as to the Rule 23 Class that predominate over any questions only affecting them individually. include, but are not limited to, the following:

a. Whether Defendant's rounding policy violates the NYLL;

b. Whether Defendant's rounding policy resulted in the employees not being paid for all the hours they worked;

c. Whether Defendant rounding policy resulted in employees not receiving overtime pay for all the overtime hours they worked when employees worked over 40 hours, in violation of the FLSA overtime provisions that an employer must pay at least 1.5 times the regular rate for all overtime hours;

d. Whether Defendant use of time clocks and rounding resulted in the failure to record, calculate and compensate employees properly and denied them wages for all of their hours of work, and was not *de minimis*, in violation of the NYLL;

e. Whether Defendant rounding policy, as implemented, was not facially neutral or, did not average over a period of time, but resulted in employees being denied payment of wages for all hours worked in violation of the NYLL;

f. Whether it is also appropriate to certify the Rule 23 Class under the NYLL;

g. Whether Defendant failed to furnish Plaintiffs in the Rule 23 Class with accurate statements of earnings including overtime as required by the NYLL;

h. Whether Defendant's rounding policy that reduced employees' wages for all hours worked including any overtime was instituted willfully or with reckless disregard of the law;

i. Whether Defendant failed to furnish Plaintiffs and the Rule 23 Class with a proper statement, and proper wage notices as required by the NYLL; and

j. The nature and extent of the class-wide injury and measure of damages for those injuries.

## PLAINTIFFS' FACTUAL ALLEGATIONS

58. Consistent with Defendant's policies, patterns or practices as described herein, Defendant harmed Plaintiffs individually as follows:

59. Defendant did not pay Dalton Ludwig, Travis McCarthy and others that worked a continuous shift schedule, wages for all hours worked and overtime due to the imposition of and the manner in which they applied a rounding policy by rounding down hours for all the time they were suffered or permitted to work while toiling for hours beyond the forty (40) hour workweek on behalf of the Defendant and due to Defendant's policies, patterns or practices.

60. Plaintiffs Ludwig and McCarthy, both Millwrights, were paid on a weekly basis and their hourly rate was adjusted annually based on a cost-of-living adjustment, which percentage changed each year.

61. Plaintiffs Ludwig and McCarthy, like other employees, clocked in and out by the employer's use of a digital time clock.

62. The employer, CCS, deployed four (4) different shifts for employees that worked as part of its continuous operations.

63. Plaintiffs Ludwig and McCarthy worked the 12-hour shift, known as part of the "A1" crew shift from 7:00 AM to 7:00 PM, in a "2-2-3" schedule, consisting of 2 days on, 2 days off, then 3 days on for the first workweek, and then the following week a in a "3-2-2" schedule (2 days off, 2 days on, and 3 days off), which amounts to 60 hours in week one and 24 hours in week two, for a total of 84 hours during a 2 week period, except for times when they took vacation, sick days or holidays ("Continuous Operation Schedule & Shift Rotation").

64. Other employees, including those similarly situated, also worked the Continuous Operation Schedule & Shift Rotation whether during the day on the first shift like Plaintiffs Ludwig and McCarthy, or during the second shift from 7:00 PM to 7:00 AM.

65. In addition to Plaintiffs' Ludwig and McCarthy regularly scheduled hours as part of the Continuous Operation Schedule & Shift Rotation, they also regularly worked extra shifts.

66. In Plaintiff Ludwig's case, for example, he regularly worked approximately two (2) to four (4) hours overtime which resulted in overtime over forty (40) hours of between fifteen (15) and twenty (20) hours per week and on average about sixty (60) hours total at least every other week when he was scheduled under the Operation Schedule & Shift Rotation to work a forty (40) hour shift.

67. For example, during pay periods ending on May 18, 2025 and May 25, 2025, Plaintiff Ludwig tracked his hours for a two-week pay period, of the precise times that he clocked in and out, to demonstrate the impact of the rounding policy. For the pay period ending May 18, 2025, Plaintiff Ludwig worked 58 hours and 42 minutes, but was paid only 57 hours and 32 minutes, resulting in 70 minutes of uncompensated overtime. For the pay period ending May 25, 2025, he worked 73 hours and 18 minutes, but was paid only 72 hours and 30 minutes, resulting

in 48 minutes of uncompensated overtime, which in connection with his payroll record, demonstrated he was shorted $113.66 of overtime pay.

68. Plaintiff Ludwig's pay rate is $38.66 an hour, and he is eligible to receive pay for overtime when he works over forty (40) hours in a workweek. But the Defendant's rounding policy resulted in Plaintiff Ludwig, and other employees like him in not being paid for all the hours he worked, including overtime.

69. Plaintiff McCarthy, like Plaintiff Ludwig and others like them, works a lot of overtime, approximately thirty (30) hours on average per month and is shorted hours and pay due to the same unlawful policy. But the Defendant's rounding policy resulted in Plaintiff McCarthy, and other employees like him, in not being paid for all the hours he worked, including overtime.

70. These examples demonstrate that, under CCS's rounding policy, if an employee clocks in up to fifteen (15) minutes before the scheduled start time of the shift, and starts work, or clocks out up to fifteen (15) minutes after the end of the scheduled shift, the employee's hours are rounded down resulting in a being shorted the number of hours they work.

71. CCS's rounding policy is one-sided, and only ever works to CCS's benefit and never to the benefit of the employees because CCS rounds down the time when employees work more than their scheduled shift.

72. Therefore, over time, CCS's employees are being systematically denied pay for time that they work beyond their scheduled shift, including overtime pay during workweeks in which they work more than forty (40) hours, which does not average out. CCS's own written policy did not permit or allow CCS not to pay employees overtime who were working and clocked in up to fifteen (15) minutes early or clocked out up to fifteen (15) minutes later, consistent with CCS's own *modus operandi* to continuously have their manufacturing operations ongoing through the

day and through the night as opposed to a conventional schedule "to maximize the efficiency of the plant and its production by running continuously around the clock" as the key to CCS's success.

73. Plaintiffs Ludwig and McCarthy were never instructed not to clock in early or stay late, nor were they disciplined for clocking in earlier to start work or clocking out later after working beyond the end of their shift and were entitled to be paid.

74. When Plaintiff Ludwig began to get suspicious about the accuracy of his pay, he spoke to an individual from Corporate Human Resources, named Mickey Fenn, who visited the Nichols Plant #35 from his corporate office, in either Pennsylvania or Florida, in or about March 2025. When Plaintiff Ludwig brought his questions about and related to the implementation of the rounding by CCS to Mr. Fenn's attention, instead of answering the questions, Mr. Fenn told Plaintiff Ludwig that, if he did not like the rounding, he could leave employment.

75. Such threat by Mr. Fenn in his position as the individual from Corporate Human Resources and the person with authority to handle employee matters, including inquiries related to the employer's policies, and within the scope of his duties, was made in retaliation of Dalton's questioning of the employer's policy of rounding to protect his rights, and an implied, if not express threat, that Plaintiff Ludwig would face termination or other adverse employment actions if he brought up the rounding policy to the employer again, and is retaliation by the employer.

76. Additionally, around this time, the employer suddenly placed a notice by the clock related to clocking in.

77. Upon information and belief, Defendant always imposed the rounding policy that resulted in failure to pay the correct amount of overtime because it does not round to the nearest quarter hour and always rounds in the employer's favor and does not average out over time. 29 C.F.R. § 785.48(b).

78. Upon information and belief, this rounding policy applied to approximately 150 employees at CCS plants in New York who worked a schedule of 12-hour shifts in a "2-2-3" and the following week in the inverse as applied to Dalton Ludwig, but did not apply to what was known as employees with regular five (5) day work weeks of eight (8) hour shift schedules ("Conventional Operation Schedule").

79. Defendant also concealed the actual implementation of the rounding policy from its employees by failing to preserve time records related to rounding and by reflecting in statements and other notices only pay according to the rounding but not the actual hours worked.

80. Defendants' time keeping system is fully capable of recording the precise minute that employees clock in and out and rounding was not necessary because of industrial realities.

81. Upon information and belief, the rounding policy only applied to the employees, who were part of the Continuous Operation Schedule & Shift Rotation and not the Conventional Operations Schedule.

82. Defendant failed to pay overtime and failed to furnish Plaintiffs with accurate statements which took into account their rounding policy and its impact of wages, hours worked, overtime, or accurate annual wage notices, and other employees like him on the Shift Rotation Schedule.

## FIRST CAUSE OF ACTION

### FLSA - Failure to Pay Wages for All Overtime Hours Worked Due to the Rounding Policy (On behalf of Plaintiffs and all FLSA Collective Members)

83. Plaintiffs, on behalf of themselves and the FLSA Collective Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

84. Defendant has engaged in a widespread pattern, policy, and practice of violating the FLSA, by means of implementing an unlawful rounding policy as detailed in this Class Action

Complaint and resulting in systematically denying their employees payment for hours actually worked.

85. At all relevant times, each of the Defendant has been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, each Defendant has employed "employee[s]" including Plaintiffs and the FLSA Collective Members.

86. Defendant was required to pay directly to Plaintiffs and the FLSA Collective Members the overtime wages at 1.5 times the employee's regular rate for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a).

87. Defendant failed to pay Plaintiffs and the FLSA Collective Members, the overtime amounts to which they are entitled under the FLSA.

88. When Plaintiff Ludwig brought his questions about rounding by CCS to Corporate Human Resources, Mickey Fenn only responded that if Plaintiff did not like the rounding, he could leave employment

89. Defendant's unlawful conduct, as described in this Class Action Complaint herein, has been willful and intentional since Defendant rounding policy has been implemented in a manner that violated the FLSA for years, and Defendant was aware and should have been aware the practices described in this Class Action Complaint were unlawful and Defendant made no good faith effort to comply with the FLSA by the means of which they implemented their rounding policy.

90. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 201 *et seq.*

91. As a result of Defendant's willful violations of the FLSA, Plaintiffs and the FLSA Collective Members have suffered damages by being denied overtime payments in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, plus liquidated damages, prejudgment interest, attorney's fees, costs, and other compensation pursuant to 29 U.S.C. § 201 *et seq.*

**SECOND CAUSE OF ACTION**

**NYLL – Underpayment of Wages & Overtime for All Hours Worked Due to the Rounding Policy**
**(On behalf of Plaintiffs and all Rule 23 Class Members)**

92. Plaintiffs, on behalf of themselves and the Rule 23 Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

93. Defendant's rounding policy, denied Plaintiffs and the Rule 23 Class Members wages for all the hours they worked, including overtime wages at 1.5 times the employee's' regular rate for all hours worked over 40 in a workweek.

94. The Defendant's rounding policy violates the NYLL.

95. If the Court certifies the FLSA rounding claims for collective treatment, it is also appropriate to certify a Class Action for the violation of NYLL as a result of rounding.

96. Through their knowing or intentional failure to pay Plaintiffs and the Rule 23 Class Members wages for all hours worked including overtime due to the manner in which Defendant implemented their rounding policy for many years, Defendant has willfully violated the NYLL, Article 19, § 650 *et seq.*, and supporting New York State Department of Labor Regulations.

97. Due to Defendant's willful violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendant the actual wages for all time worked including overtime wages, liquidated damages as provided by the NYLL, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION

**NYLL - Failure to Provide Proper Wage Notices**
**(On behalf of Plaintiffs and the Rule 23 Class Members)**

98. Plaintiffs, on behalf of themselves and the Rule 23 Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

99. Defendant failed to furnish Plaintiffs and the Rule 23 Class wage notices as required by NYLL, Article 6, § 195(1) in English or in the language identified by each employee is a primary language, at the time of hiring, and on or before February 1 of each subsequent year the employees employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, peace, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular payday designated by the employer in accordance with the NYLL, Article 6, § 191, the name of the employer; any doing business as names used by employer; the physical address of the employer's main officer principal place of business, and the mailing address of different; the telephone number of the employer; plus such other information as the Commissioner deems material and necessary.

100. Due to Defendant's violations of NYLL, Article 6, § 195(1), Plaintiffs and the Rule 23 Class are entitled to statutory penalties in the amount of $50 for each workday that Defendant failed to provide Plaintiffs and Members of the Rule 23 Class with proper wage notices, or a total of $5,000 each, and reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article § 198 (1-b).

## FOURTH CAUSE OF ACTION

**NYLL - Failure to Provide Proper Wage Statements**
**(On behalf of Plaintiffs and the Rule 23 Class Members)**

101. Plaintiffs, on behalf of themselves and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

102. Defendant failed to furnish Plaintiffs and the Members of the Rule 23 Class with the statement with every payment of wages as required by NYLL, Article 6, § 195(3) listing: the dates of work covered by that payment of wages; neighbor employee; name from employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, peace, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

103. Due to Defendant's violations of NYLL Article 6, § 195, Plaintiffs and Members of the Rule 23 Class are entitled to statutory penalties of $250 for each workday that Defendant failed to provide Plaintiffs and Members of the Rule 23 Class with proper wage statements, or a total of $5,000 each, and reasonable attorneys' fees, costs, and injunctive and declaratory relief as provided for by NYLL, Article 6, § 198(1-d).

**WHEREFORE**, Plaintiffs, collectively on behalf of all other similarly situated persons, pray for the following relief:

A. At the earliest possible time, Plaintiffs should be allowed to give notice of this Class Action, or that the Court issued such notice, to all persons who are presently, or have at any time during the past 3 years immediately preceding the filing of this suit, up through and including the date of issuance of a Court - supervised notice, been employed by CCS, as part of the Continuous Operation Schedule & Shift Rotation. Such notice shall inform

them that the civil action has been filed, the nature of the action, and of the right to join the lawsuit if they believe they were denied pay for all hours worked and overtime or have been underpaid to the rounding policy;

B. Unpaid wages and overtime and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*, and the supporting United States Department of Labor Regulations for Plaintiffs and all those similarly situated;

C. Certification of this case as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as Representatives of the Rule 23 Class, and counsel of record as Class Counsel;

E. Pre-judgment interest and post-judgment interest;

F. An injunction requiring Defendant to pay all statutorily required overtime and wages pursuant to the NYLL;

G. Issuance of a declaratory judgment that the practices complained of in this Class Action complaint are unlawful under NYLL Article 6, §§ 190, 191 *et seq.* and 193 and NYLL Article 19, § 650 *et seq.* and the supporting New York State Department of Labor Regulations;

H. Statutory penalties of $50 for each workday the Defendant failed to provide Plaintiffs and the Members of the Rule 23 Class with proper wage notices, or total $5,000 each, as provided for by NYLL Article 6, § 198;

I. Statutory penalties of $250 for each workday that Defendant failed to provide Plaintiffs and the Members of the Rule 23 Class with proper wage statements, or total of $5,000 each, as provided for by NYLL, Article 6, § 198;

J. Reasonable attorneys' fees and costs of the action; and

K. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 6, 2026.

Respectfully Submitted,

Carol A. Crossett, Esq. (Admitted)
TULLY RINCKEY, PLLC
420 Lexington Avenue, Suite 1601
New York, New York 11375
(646) 813-2966
ccrossett@tullylegal.com

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party Plaintiff in a lawsuit against Corporate Defendant and against the Individual Defendant in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

____________________
Signature

Dalton Ludwig
Print Full Name

9204 berwick turnpike
Street Address

Milan,PA
City, State

18831
Zip Code

**FAIR LABOR STANDARDS ACT CONSENT**

I consent to be a party Plaintiff in a lawsuit against Corporate Defendant and against the Individual Defendant in order to seek redress for violations of the FLSA, pursuant to 29 U.S.C. 216(b).

By signing and returning this consent form, I hereby designate TULLY RINCKEY PLLC (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf that are not paid to the Firm directly will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will Petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: the lodestar amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or one third of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a Court, whether it is favorable or unfavorable.

Signature

Travis McCarthy
Print Full Name

1296 Wyncoop Creek Road
Street Address

Chemung , NY
City, State

14825
Zip Code